IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 5, 2008

**STATE OF TENNESSEE v. SUNNI ADKINS**

**Appeal from the Circuit Court for Lewis County**
**Nos. 6708 & 6730    Jeffrey S. Bivins, Judge**

_____

**No. M2007-01355-CCA-R3-CD - Filed July 3, 2008**

_____

The Defendant, Sunni Adkins, pled guilty to three counts of child abuse, Class A misdemeanors, and one count of aggravated assault, a Class C felony. She was sentenced to eleven months and twenty-nine days for each misdemeanor and to four years for the felony to be served as a Range I standard offender. The misdemeanor sentences were ordered to be served concurrently with one another but consecutively to the felony sentence. Additionally, six months of each misdemeanor sentence was ordered to be served in confinement. On appeal, the Defendant argues that the trial court erred in sentencing her by improperly applying certain statutory enhancement factors and by denying full probation or another alternative sentence. Following our review of the record and the parties' briefs, we uphold the sentences ordered by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. JOSEPH M. TIPTON, P.J., filed a separate concurring opinion.

Larry Joe Hinson, Hohenwald, Tennessee, for the appellant, Sunni Adkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Stacey Edmonson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

In October 2006, the Lewis County Grand jury indicted the twenty-year-old Defendant in case number 6708 for seven counts of child abuse and three counts of domestic assault. In January 2007, the grand jury indicted the Defendant in case number 6730 for three additional offenses she allegedly committed while released on bond: aggravated child abuse, aggravated child neglect, and domestic assault.

In March 2007, the Defendant pled guilty in case number 6708 to three counts of child abuse. At the same time, she pled guilty in case number 6730 to aggravated assault, a lesser-included offense.[1] Pursuant to the Defendant's plea agreement, the remaining charges in both cases were dismissed, and her sentences were to be determined by the trial court following a sentencing hearing. In April 2007, a joint sentencing hearing was held for the Defendant and her co-defendant, Tommy Crews.

At the sentencing hearing, Officer Robert Taylor of the Hohenwald Police Department testified that he was involved in an investigation of suspected abuse to Tommy Crews's three young children in March 2006. The Defendant began living with Crews in November 2005, and she had assumed primary responsibility for his children. According to the Defendant, she and Crews were "friends." Victim 1[2] was a nine-year-old boy; Victim 2 was a thirteen-year-old girl; and Victim 3 was an eight-year-old boy.

According to Officer Taylor, one of Victim 1's teachers noticed he had a suspicious "mark" on his arm. The teacher asked Victim 1 if he had other marks, and he responded that he did. Several other bruises that appeared to have been inflicted with a "switch" were discovered on his body, and the Department of Children's Services and the police were notified. Asked how he received the injuries, Victim 1 described the following method of punishment employed by the Defendant and Crews: the children were made to stand upright on their toes with their arms outstretched, palms up, holding a telephone book on each hand. If a book was dropped or their heels touched the floor, they were "switched."[3] Victim 1 further explained to Officer Taylor that they were punished through this method when they "got in trouble" for "not listening" or not doing what they were told. Officer Taylor identified photographs of Victim 1 depicting extensive "switch marks" on his lower body.

Officer Taylor also spoke with Victim 2 (the thirteen-year-old girl), and she described the same method of punishment, saying they received these "whippings" three to five times a week. According to Victim 2, sometimes the Defendant and Crews would use a belt or their hands, "but typically the punishment was with the telephone books." Several photographs of Victim 2 were also introduced through Officer Taylor. When the photographs were taken, she had severe bruising from dozens of "switch marks" on each leg.

---

[1] There is no transcript of the Defendant's guilty plea submission hearing in the record before this Court. Accordingly, we rely primarily on the evidence adduced at her the sentencing hearing and the information contained in her presentence report in setting out a factual background as relevant to this appeal.

[2] In order to protect the identity of minor victims of abuse, it is the policy of this court not to refer to them by name. We use numbers here because the victims all have the same initials.

[3] Later testimony revealed that the children were initially required to stand on their toes, holding the telephone books out to their sides for five to ten minutes, but if they dropped a book or their heels, an additional fifteen to twenty minutes would be added. When a child failed to hold up the books or stay on their toes, he or she would be hit once or twice with the switch. The switch was described as being "about the size of the small end of an umbrella, half-inch in diameter, but not as long as an umbrella."

Victim 3 (the eight-year-old boy) related essentially the same account of the beatings to Officer Taylor. He had been beaten by hand, with a belt, and was subjected to the telephone book punishment. Several photographs of extensive and widespread bruising on his lower body were also introduced in evidence.

Officer Taylor interviewed Crews and the Defendant in March 2006. Crews told him that the telephone book punishment was the Defendant's idea, and they began using it when he noticed that he had "left" bruises on one of the boy's buttocks with a belt. At the time of the interview, they had been using the telephone book method of punishment for approximately one and one-half months. The Defendant told Officer Taylor that Victim 2 was subjected to the telephone book punishment on one occasion because she told a lie "about making some tea."

After these interviews, Officer Taylor secured arrest warrants for the Defendant and Crews on March 31, 2006, and the grand jury indictments in case number 6708 followed.

Subsequently, in July 2006, Officer Taylor was alerted to an additional incident involving Victim 3, who had arrived at a hospital[4] with "marks all over him":

> He had a gash in his forehead, his eye was black, he had a mark across his face that appeared to be a hand print, there was a mark on his other eye that—what appeared to be—it looked to be a belt buckle of some sort, some mark like that, he had bruising on his back, his legs, and marks all on his face and on his cheek.

Several photographs of Victim 3's injuries were entered as a collective exhibit. The photographs, included in the record on appeal, reflect substantial swelling and bruising to Victim 3's face (including two black eyes and a substantial cut on his forehead), multiple, dark-purple bruises covering his lower back, as well as "switch marks" and other abrasions covering much of the rest of his body.

At that time, Victim 3 reported that he received the injuries from falling off a bunk bed and fighting with his brother. In a later interview, Victim 3 recanted this story and stated that the injuries occurred as follows:

> [I]t started from him telling a story about getting into a pie in the refrigerator and then lying about it. He stated that [the Defendant] had slapped him, choked him, making his head go back and forth, and he put his hands up to his throat like the choking motion that was used. [Victim 3] said [the Defendant] whipped him with a belt while he was on the floor, hit him in the eye, one of the marks in the eye is where she hit him in the eye when she slapped him. [Victim 3 also] said that [the Defendant] had kicked him and he fell and hit his head on the bed, that's where the gash in his head came from.

---

[4] Crews's mother (who also lived in the household) had driven Victim 3 to the medical center that night.

In the second interview, Victim 3 related that he had initially reported the story about the bunk bed and fight with his brother because the Defendant had told him what to say and that he had to "stick to the story." Victim 3 said that his father, Crews, had been present during the beating and watched it happen, but he did not "do anything about it." The Defendant told Officer Taylor that Victim 3 was injured from a fall from a bunk bed and a fight with his brother.

Tina Richardson, an investigator with the Department of Children's Services, testified that as a result of civil judicial hearings, the three victims had been removed from Crews's home in the summer of 2006.

The Defendant testified that she had been physically abused by her mother as a child and that "it was reported a lot." She moved out of her mother's house in Florida when she was seventeen and had lived in approximately six other places before moving in with Crews and his family in Hohenwald at the age of nineteen. Asked whether the abuse she suffered as a child affected the way she "dealt with" Crews' children, the Defendant said that she "had a lot of anger, and it was like it was the only thing [she] really knew how to do."

On cross-examination, she admitted that she caused "some" of the injuries depicted in the photographs of the victims. Particularly, she confirmed that she had caused the injuries to Victim 3 in July 2006 by hitting him with her hands and a belt, although she denied hitting him with her fists. She also confirmed that she had beaten the eight-year-old boy on that occasion because he lied about whether he ate a piece of pie.

The Defendant stated that since that incident, she had started taking various medications to treat depression, stabilize her mood and help her sleep. The Defendant also reported that she was going to counseling once every three weeks.

The Defendant's friend, Patricia Franks, testified that the Defendant could live with her if she were granted a probationary sentence. Franks further vowed to support the Defendant by providing her with transportation and helping her secure a full-time job.

Crews testified that before the Defendant began living in his home, the Department of Children's services had questioned him regarding the discipline he administered to his children; however, the telephone book punishment began at the Defendant's suggestion. Asked how he viewed that method of punishment, Crews said, "It was wrong."

After the Defendant moved in, she cooked and cleaned and was the children's primary care taker. According to Crews, he and the Defendant were not romantically involved. He admitted that he had desired and encouraged a romantic, physical relationship with the Defendant after she moved

in with him, but the Defendant did not express any interest in such a relationship until he posted her bond following her first arrest.[5]

After hearing argument, the trial court first noted that, pursuant to Tennessee Rule of Criminal Procedure Rule 32(c)(3)(C), any sentence issued in case number 6730 would be ordered to be served consecutively to any sentence from case number 6708 because the offense in case number 6730 was committed while the Defendant was released on bail in case number 6708. See Tenn. R. Crim. P. 32(c)(3)(C) (making consecutive sentences mandatory in such a situation).

The trial court also noted the following about the sentencing laws governing the application of statutorily defined enhancement and mitigating factors to the Defendant's case:

> In making its determination on all of theses charges, the court must consider any enhancement factors and any mitigating factors. The court does, however, note for the record that because this case is governed by the amended act, in that these actions, all of the actions, occurred after June 25th, 2005, the ranges and the factors are merely advisory to this court. This court is not required to apply those, but does look to those for guidance, and has done so in rendering its decision here today.

The trial court then found that five statutory enhancement factors were applicable in the Defendant's case. First, the court concluded that the victims were particularly vulnerable because of age. See Tenn. Code Ann. § 40-35-114(4). The court informed that it placed "significant weight" on this factor and that it was applicable to all four of the Defendant's convictions. Second, the court determined that the Defendant treated Victim 3 with exceptional cruelty during the commission of the felony assault, and again the court placed significant weight on that enhancement factor. See Tenn. Code Ann. § 40-35-114(5). Thirdly, the court found that the personal injuries inflicted upon the victims were particularly great. See Tenn. Code Ann. § 40-35-114(6). In applying this factor, the trial court commented on the victims' photographs:

> Again, the pictures in this case are quite telling. This court, quite frankly, has never seen pictures that show such egregious physical injuries in a child abuse situation. Therefore, the court will apply that factor directly to the felony charge as to both defendant[s], and will consider that with regard to the misdemeanor offenses, as well.

Fourthly, the court found that the Defendant was released on bail on the misdemeanor child abuse charges when the felony assault was committed and stated that it placed "some importance" on that factor. See Tenn. Code Ann. § 40-35-114(13)(A). And finally, the court decided that the Defendant abused a position of private trust in committing all the offenses because she was "living in the home and taking care of the children," and the court placed significant weight on that factor. See Tenn. Code Ann. § 40-35-114(14).

---

[5] Other witnesses testified on behalf of Crews. Their testimony is not relevant to the disposition of the Defendant's case.

The trial court declined to apply two other factors requested by the State. Specifically, the court reasoned that because each conviction pertained to a single victim, that the enhancement factor regarding multiple victims of an offense was inapplicable. See Tenn. Code Ann. § 40-35-114(3). Further, the trial court determined that because the felony offense was not committed while the Defendant was serving a sentence involving release in the community, that factor was not applicable.[6] See Tenn. Code Ann. § 40-35-114(8).

As for mitigating factors, the trial court determined that two applied in the Defendant's case. First, the court found that the Defendant, who was nineteen years old at the time of the commission of the offenses, lacked substantial judgment in committing the offense because of her youth. See Tenn. Code Ann. § 40-35-113(6). Additionally, the trial court noted that the Defendant had "a very troubled childhood." See Tenn. Code Ann. § 40-35-113(13). However, the court placed "little weight" on these mitigating factors.

In consideration of the foregoing factors of sentence enhancement and mitigation, the trial court sentenced the Defendant to eleven months and twenty-nine days for each misdemeanor child abuse conviction. Next, because it was undisputed that the Defendant was properly classified as a Range I, standard offender, the trial court determined that she could be sentenced to not less than three nor more than six years for her Class C felony conviction. See Tenn. Code Ann. § 40-35-112(3). The trial court then reasoned that the Defendant's sentence should be elevated to five years based on applicable enhancement factors and then lowered to four years due to applicable factors in mitigation. See Tenn. Code Ann. § 40-35-210(e).

Following these determinations, the trial court then took up the issue of the manner in which the Defendant's sentences should be served. As set out above, the misdemeanor sentences were ordered to be served concurrently to one another but consecutively to the felony offense pursuant to Tennessee Rule of Criminal Procedure 32(c)(3)(C). The trial court also denied the Defendant probation or any alternative sentence, reasoning as follows:

> The court then must consider whether probation is appropriate, or some type of alternative sentencing is appropriate. As a result of these charges, both defendants are entitled to be considered for probation, indeed, there is a presumption in favor of probation. But the court does note that although there is a presumption in favor of probation, the burden is still upon the defendants to show an entitlement to probation in this matter.
> In making this determination, the court must consider the relevant sentencing guidelines. The court must consider the circumstances of the offense, [and] as this court has previously stated, [the circumstances] are quite egregious. When one reviews the pictures involved in this case, it is really mind-boggling, the amount of

---

[6] The State argued that this factor was applicable because the Defendant had filed a "safety plan" with the Department of Children's Services prior to the July 2006 offense.

abuse that has been imposed upon these children. That factor clearly [weighs] against the grant of full probation on any of these charges.

The court considers the likelihood of rehabilitation. The court does find that both [defendants] have expressed remorse in this matter, and to varying degrees, perhaps, the court does credit that as genuine. And the court does find that there is, perhaps, some likelihood of rehabilitation if there were appropriate training and appropriate counseling. However, the court does not find this factor to be weighed greatly in favor of a grant of full probation.

The court must also consider whether confinement is necessary to avoid the depreciation of the seriousness of the offense. The court does feel that this case presents a strong case in which granting full probation would depreciate the seriousness of the offense. The court must also consider whether the denial of full probation would be an effective deterrent to other parties from committing this offense. The court does not find that there is sufficient evidence in the record to support that factor. But with regard to depreciating the seriousness of the offense, the court finds that weighs heavily against a grant of full probation in this matter.

The court must also consider whether previous less restrictive means have been applied. And although the court does note that they have been on bail, the court does not find that that is a factor which mitigates in favor of denial of probation. So the court would find that that factor, in fact, would favor the grant of probation.

When all of those factors are considered, this court does not find that the evidence supports a finding by this court that the defendants are entitled to full probation.

The trial court found that the Defendant's sentences should be served in confinement. Accordingly, the trial court ordered that the Defendant would serve her sentences in the custody of the Department of Correction and the local jail.

It is from these determinations that the Defendant now appeals.

**ANALYSIS**

**I.      Waiver**

Initially, we address the State's argument that the Defendant waived review of her sentencing issues by failing to include a transcript of her guilty plea submission hearing in the appellate record. The State correctly asserts that the Defendant bears the burden of presenting an adequate record for this Court's review. See State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993); see also Tenn. R. App. 24(b). This Court has also held that in order for an effective review of sentencing to be conducted, a defendant must include a transcript of the relevant guilty plea submission hearing in the record. See State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999) ("[A] transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed."). However, in this case, we conclude that sufficient testimony regarding the nature of the Defendant's offenses was adduced at the sentencing hearing to allow this Court to evaluate the propriety of her sentences, as has occurred in similar cases. See, e.g., State v. William Michael

Clark, No. M2007-00904-CCA-R3-CD, 2008 WL 852054, at *4 (Tenn. Crim. App., Nashville, March 31, 2008).

## II.    Standard of review

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

## III.    Presentence Report

The presentence report reflects that at the time of sentencing, the Defendant was twenty years old and unmarried. She had attended high school and/or was home-schooled until approximately the eleventh grade. She reported that she suffered from depression and was being treated with medication. She also reported that she had attempted suicide in the past. She reported that she had been employed as a laborer in Florida for approximately nineteen months, which ended in 2005. The Defendant had no significant history of criminal convictions or criminal behavior.

## IV.     Enhancement factors

On appeal, the Defendant argues that the trial court misapplied three out of five enhancement factors. The Defendant admits that she committed the felony offense while released on bail and that she abused a position of private trust. See Tenn. Code Ann. §§ 40-35-114(13), (14). However, she contends that the trial court erred by finding that the victims were particularly vulnerable, that Victim 3 was treated with exceptional cruelty, and that the personal injuries inflicted on the victims were particularly great. See Tenn. Code Ann. §§ 40-35-114(4)-(6).

### a.     Particular vulnerability

Use of the "particularly vulnerable" enhancement factor is appropriate when the facts of a case "show that the vulnerabilities of the victims had some bearing on, or some logical connection to, 'an inability to resist the crime, summon help, or testify at a later date.'" State v. Lewis, 44 S.W.3d 501, 505 (Tenn. 2001) (quoting State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997)); see also State v. Kissinger, 922 S.W.2d 482, 487 (Tenn. 1996); State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). The evidence presented at the Defendant's sentencing hearing established that the youth of her victims had some bearing on their inability to resist the crimes. Were the victims not young children, they would not or could not have been forced to suffer the telephone book punishment; older, more physically developed, and stronger people would have been much better suited to resist. Similarly, it is unlikely that the Defendant would have been able to choke and beat an adult as she did eight-year-old Victim 3. Accordingly, the trial court properly applied Tennessee Code Annotated section 40-35-114(4) because the victims of her offenses were particularly vulnerable because of their young ages. See Lewis, 44 S.W.3d at 505.

### b.     Exceptional cruelty

The Defendant further argues that the trial court erred by finding that she treated Victim 3 with "exceptional cruelty" during the commission of the offense. See Tenn. Code Ann. § 40-35-114(5). Again, we disagree. Our supreme court has explained that in order to support a finding of exceptional cruelty, the record must demonstrate "a culpability distinct from and appreciably greater than that incident to the crime." State v. Spratt, 31 S.W.3d 587, 607 (Tenn. Crim. App. 2000) (citing State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997)) (internal quotations omitted). The photographs evincing the severity of the beating she administered to Victim 3 provide evidence that she treated him with exceptional cruelty in committing aggravated assault. The reason the Defendant cited for the abuse (a child lying about eating a piece of pie) also underscores the cruelness of the punishment. This factor was not incorrectly applied. See State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995) ("Exceptional cruelty is usually found in cases of abuse or torture.").

### c.     Particularly great injury

The Defendant also argues that the trial court erroneously found as an enhancement factor that the victims' injuries were particularly great. See Tenn. Code Ann. § 40-35-114(6). We conclude that the trial court did err by using this factor to enhance the Defendant's sentence for aggravated assault because serious bodily injury is an element of that crime in the Defendant's case. See State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994); State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995); see also Tenn. Code Ann. § 39-13-102(a)(1)(A) (providing the relevant definition

of aggravated assault). Similarly, the trial court erred by applying this factor to the Defendant's misdemeanor child abuse convictions because, although quite disturbing to view as depicted in the photographs, the extensive bruising all three children sustained on their lower bodies was not severe enough to warrant application of this factor. See Spratt, 31 S.W.3d at 607 (cuts, bruises, scratches and headaches for two weeks were not sufficient for this enhancement factor to apply).

The trial court did not find that the children suffered particularly great psychological injuries, nor did the State introduce any evidence to that effect. Consequently, application of this factor cannot be based on the non-physical ramifications of the abuse. See Arnett, 49 S.W.3d at 260–61.

Notwithstanding our conclusion that the trial court misapplied one enhancement factor, the remaining four enhancement factors that were properly applied provided a sufficient basis for the trial court to elevate the Defendant's felony sentence above the minimum three-year term. The Defendant's argument on this point lacks merit.

### V.      Probation

Lastly, the Defendant argues that the trial court erred by denying full probation or another alternative sentence. She contends that it would be in the best interest of the public if she received full probation, citing three reasons in support of her contention: she has no additional criminal history; she was abused as a child; and she underwent counseling.

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See Tenn. Code Ann. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. See id. § 40-35-303(b). No criminal defendant is automatically entitled to probation as a matter of law. See id. § 40-35-303(b), Sentencing Commission Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See id. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

In the present case, the Defendant was eligible for a probationary sentence because she was sentenced to less than ten years. See Tenn. Code Ann. § 40-35-303(a). Moreover, she was presumed to be a favorable candidate for alternative sentencing because she was sentenced as a standard

offender for a Class C felony. See Tenn. Code Ann. § 40-35-102(6)(A). However, this presumption can be rebutted by "evidence to the contrary." See id. The following factors, as set out in Tennessee Code Annotated section 40-35-103(1)(A)-(C), may be considered as evidence to the contrary for the purposes of evaluating whether an offender should receive an alternative sentence or a sentence of confinement:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).


As set out above, the trial court in this case specifically denied the Defendant a probationary sentence because the court concluded that granting probation would depreciate the seriousness of the offense. See Tenn. Code Ann. § 40-35-103(1)(B). In order for probation to be properly denied based solely on the nature of the offense, the criminal act, as committed, must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985). Otherwise stated, the nature of the offense must outweigh all factors favoring probation. Id.

The record before this Court adequately illustrates the seriousness of the Defendant's offenses and fully justifies the trial court's denial of probation or an alternative to incarceration. The telephone book punishment (an act that can be fairly described as torture) that the Defendant repeatedly visited upon the three child victims, as well as the severity of the beating she inflicted upon eight-year-old Victim 3, were especially shocking, reprehensible and offensive ways to treat children.

**Conclusion**

Based on the foregoing authorities and reasoning, we conclude that the trial judge did not err or abuse his discretion in sentencing the Defendant. The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE

-11-